CARL E. JONES, ET AL.

V.

DOKOS ENTERPRISES, INC., ET AL.

Record No. 840702

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Cochran, Retired Justice

*Stuart L. Nachman (Kalfus, Nachman and Stanley, P.C.*, on brief), for appellants.

*Avery T. Waterman, Jr. (Ben A. Williams, III; Patten, Wornorm & Watkins*, on brief), for appellees.

THOMAS, J., delivered the opinion of the Court.

In this case of first impression in the Commonwealth, we decide whether a lessee, who made security deposits to ensure performance of provisions in two separate leases, retains rights in those security deposits after he has assigned the leases. The trial court held that the assignee was entitled to the security deposits. Under the facts and circumstances of this case, we disagree. Therefore, we will reverse the judgment of the trial court.

Carl E. Jones, either individually or through his wholly owned corporation, J. W. Jones, Inc. (hereinafter collectively "Jones"), owned two McDonald's Restaurant Corporation (McDonald's) franchises and leased two stores from McDonald's. The two leases required security deposits of $15,000 each. Both leases contained the following language: "No assignment (with or without Lessor's consent) shall release Lessee from any of its obligations hereunder."

In June 1983, while the two McDonald's leases were still in effect, Jones entered separate contracts with Dokos Enterprises, Inc., and Dokos Enterprises-Peninsula, Inc. (hereinafter collectively "Dokos"), to sell his interests in his two McDonald's stores. The two contracts were identical in pertinent part. Jones agreed to sell "all equipment, signs, furniture, fixtures, the franchise . . . and all rights under the lease." The contracts made no reference to the security deposits that Jones had paid to McDonald's. The testimony of the parties establishes that there was no mention of the security deposits during negotiations.

The trial court concluded that when Jones agreed to sell his franchises and leases, the security deposits were included in the sale because of Jones' agreement to sell "all rights under the lease." The result of the trial court's ruling is that Jones, who deposited a total of $30,000 to ensure performance of lease provisions, loses all rights to that money, yet remains liable for any failure to perform the lease provisions. The trial court's ruling was in error.

 It is significant that despite the assignment of the leases, Jones remained liable to McDonald's to ensure performance of the lease provisions. This principle is one of common law and, in this case, it was also a specific term of both leases. The common law rule was discussed in *Powell* v. *Orphanage*, 148 Va. 331, 138 S.E. 637 (1927), where we explained that a lessee in possession of property has two privities with his lessor: privity of contract and privity of possession. We explained further that the existence of these two privities is the basis for the rule that an assignment of a lease, even with consent of the lessor, does not relieve the lessee of liability under the lease. All an assignment does is place possession in a third party. Thus, the original lessee is no longer in privity of possession with his lessor. However, the assignment has no effect on privity of contract, and the original lessee remains in privity of contract with his lessor.

Dokos contends that the lease language which Jones relies on is not pertinent. According to Dokos, other language in the leases helps prove the point that Dokos is entitled to the two security deposits.* Dokos relies on this language: "Lessee shall also assign its interest in the security deposit required at the time and only in the event Lessor consents to an assignment of the Lease to an individual or corporation taking this lease as Lessee herein and not for the purpose of securing an indebtedness."

 The trial court was of the view that the foregoing provision was a command to Jones to assign his security deposits to any approved assignee of the lease. In the trial court's view, the fact that Jones was required by McDonald's to assign the security deposits means that he contracted to sell them to Dokos. However, in our opinion, the latter does not follow from the former. In other words, the fact that Jones was required to do an act is not proof that he did the act.

In our opinion, then, the provision referred to in the leases between Jones and McDonald's simply does not resolve the question whether the security deposits were included in the phrase "all rights under the lease."

---

* At the threshold of this discussion, Jones contends that it was improper for the trial court to consider the terms of the leases between Jones and McDonald's in deciding what the parties contracted to sell or buy in the agreements between Jones and Dokos. We reject this argument. The agreements between Jones and Dokos specifically refer to "all rights under the lease." It would be impossible to determine the rights under the lease without considering the lease.

Situations similar to the present problem were discussed in *Zustovich* v. *Morrison*, 163 Ill. App. 44 (1911), and *Nemtzoff* v. *Vagnier*, 163 N.Y.S. 1075 (Sup. Ct. N.Y. 1917). In both cases, the courts concluded that the assignee was not entitled to a security deposit previously made by its assignor.

In *Zustovich*, the lease term was from January 1, 1906, to April 30, 1909. The Lessee was required to deposit $1,350 with the lessor. If the lease covenants and conditions were met, the $1,350 would be applied to the last three months rent. If those covenants and conditions were not met, the $1,350 would be "forfeited . . . as liquidated damages." Further, if all covenants and conditions were met, the lessor would pay the lessee interest on the deposited funds.

The lessee assigned the lease on May 1, 1906. Thereafter, other assignments of the property were made. The question, however, was who was entitled to the interest on the deposited sums at the end of the lease term. The Illinois court said that Zustovich, the original lessee, was entitled to the money. The court wrote as follows on that point:

> [W]e do not agree with the defendant that by the assignment of the lease Carter was to receive the benefit of the $1,350 which had been deposited. It is quite clear that the deposit was made to guarantee the performance of the lease by the lessee, and by the lease the defendant agreed that he would pay Zustovich interest upon it at 3 per cent. The terms of the lease having been complied with it follows that the interest upon the fund is now due the lessee . . . .

163 Ill. App. at 48-49.

To similar effect is *Nemtzoff*. There, the lease commenced May 1, 1913, and had a five-year term. The lessee was required to deposit $166.66 to secure faithful performance of all conditions and covenants of the lease. The lessee remained in possession until April 12, 1915, but refused to pay rent on April 1, 1915, which would have covered the month of April. The lessee, with the consent of the lessor, assigned the lease effective May 1, 1915. The lessor applied the security deposit to the April 1915 rent.

The lessee sued his assignee under an indemnity agreement wherein the assignee had agreed to hold the lessee "harmless as to all claims made upon him in connection with the lease." The

lessee contended that pursuant to the indemnity agreement, the assignee was required to pay him the amount of the security deposit that was taken by the lessor.

The assignee argued that he was not liable because the assignment to him included the security deposit and, as a result, when the lessor seized the security deposit he was seizing the assignee's money, not the original lessee's money. The assignment assigned "all rights, privileges, franchises, interests, and assets of every name and nature owned by the party of the first part or used in the conduct of his business."

Despite the language of the assignment — which is broader than the one under review — the court held that the security deposit was not included in the assignment. The court wrote as follows on that point:

> The assignment does not refer specifically to any deposit, nor is the language of the assignment broad enough to convey to defendant any right of plaintiff in collateral deposited to secure the performance of the covenants of the lease. Plaintiff's right to recover the money is not an interest under the lease which passed by the assignment. *It was at all times the property of the plaintiff, to be recovered back or paid over to him in the event that all the covenants of the lease should be duly performed, and to be forfeited by him only in the event of a breach of any of said covenants.*

163 N.Y.S. at 1076-77 (emphasis added).

In this case, the parties did not contemplate the security deposits in their negotiations, they did not mention them in their contracts, and Jones remained liable for the performance of the obligations imposed in the leases. Therefore, we hold that the trial court erred in ruling that the security deposits made by Jones were part of assets conveyed to Dokos pursuant to the contracts between the parties dated June 13, 1983. Consequently, we will reverse the judgment of the trial court and remand the case for such further proceedings as may be necessary in light of this opinion.

*Reversed and remanded.*